665 So.2d 561 (1995)
SUCCESSION OF Therese Delaune STECKLER.
No. 95-CA-227.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 1995.
*562 Dan A. Smetherman, Curry, Rizzo & Smetherman, New Orleans, for Appellant Donaldson L. Steckler.
Edward D. Wegmann and Bari L. Diordano, New Orleans, for Appellees Julian P. Brignac, Testamentary Executor of the Estate of Therese Delaune Steckler, Robert J. Steckler, John R. Steckler, and Janis Steckler Anderson.
Before GAUDIN, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Donaldson L. Steckler, appeals from the district court judgment rendered in favor of defendant, the executor of the estate of the decedent, Therese D. Steckler, maintaining plaintiff's disinherison as stated in the decedent's will. For the reasons which follow, we reverse the judgment.
Therese Delaune Steckler died testate on April 17, 1991. In her "Last Will and Testament" dated October 12, 1987, the decedent disinherited her only child, plaintiff, with the following language:
I hearby disinherit my son, Donaldson, because he has known how to contact me, but has failed without just cause to communicate with me for a period of two years prior to execution of this will.
In her will, she also made two small bequests to two different charities and left the remainder of her estate, divided equally in trusts, to each of her four grandchildren, with the exception that her granddaughter, *563 Janice, receive an extra $100,000. Her will further provided that, in the event that her son overturned the disinherison provision, he would receive the minimal forced portion of her estate, from assets other than land and minerals, to be held in trust for the remainder of his life.
On April 29, 1991, the executor filed a petition to probate the will. Plaintiff thereafter filed a Petition to Annul Will for Lack of Capacity or Alternatively to be Recognized as Forced Heir. In his petition, plaintiff stated that the grounds for disinherison asserted in the decedent's will were not based in fact. To the contrary he alleged that he communicated with his mother through written correspondence on several occasions between 1985 and 1987 and that he exhibited a continuing effort over the years to express care and concern for his mother's well-being.
The case went forward with a hearing only on the disinherison question.[1] After the hearing, the court ruled "maintaining the disinherison of plaintiff as stated in the testament of Therese D. Steckler." It is from this judgment that plaintiff appeals.
Plaintiff argues that the trial court erred in finding that he was legally disinherited under La.C.C. art. 1621(12). That statute provides, in pertinent part:
The just causes for which parents may disinherit their children are twelve in number. There shall be a rebuttable presumption as to the facts set out in the act of disinherison to support these causes. These causes are, to wit:
12. If the child has known how to contact the parent, but has failed without just cause to communicate with the parent for a period of two years after attaining the age of majority, except when the child is on active duty in any of the military forces of the United States.
Section 12 of La.C.C. art. 1621 was added by Acts 456 of 1985, effective September 6, 1985. Prior to that, lack of communication was not a grounds for disinheriting an heir except insofar as it may have constituted proof of cruel treatment. Therefore, plaintiff argues that the court could only consider the time period following the effective date of La.C.C. art. 1621(12) in determining whether plaintiff had disproved the facts supporting the disinherison. Plaintiff contends that during that time period he presented ample evidence of communications with his mother to rebut the grounds for his disinherison.
Defendant argues that since the decedent's will was executed following the change in the law, the new provision would enable the decedent to disinherit her son for lack of communication based on actions that occurred prior to the enactment of the provision. Defendant argues that the evidence clearly did not disprove lack of communication by plaintiff with his mother for a two year period since he reached the age of majority. Additionally, defendant argues that the "communications" by plaintiff to his mother in the two years following the enactment of the statutory provision were not sufficient within the meaning of the statute to prevent the disinheritance.
In the trial court's reasons for judgment, the court found simply that "there did exist a two year period when plaintiff did not communicate with his mother after plaintiff reached the age of majority." It is not clear whether the court considered actions or, in this case inactions, by the plaintiff prior to the enactment of the statute or whether the court found that plaintiff's communications were insufficient to obviate the ground for disinheritance. However, we find that neither alternative would support the court's judgment maintaining the disinherison.
The right of forced heirship is vested in the 1974 constitution in Article XII, § 5, which declares that "[n]o law shall abolish forced heirship." The history of this constitutional provision indicates that its proponents recognized the importance of preserving the legal institution of forced heirship, especially its core principle of equality of heirship, in order to further significant social *564 and economic interests. Succession of Lauga, 624 So.2d 1156 (La.1993). The constitutional preservation of forced heirship was perceived as a means of ensuring several important private and public policies: equitable distribution and equality of heirship among children, lessening of disputes, will contests and other wasteful litigation, harmony and solidarity of the family, and continued prevention of the cummulation of excessively large fortunes through primogeniture and entailment. Succession of Lauga, supra. Therefore, while a child does not have a vested right in his parent's property during the lifetime of the parent, he does have a constitutionally vested right of inheritance to a fixed portion of his parent's estate.
Against this constitutional backdrop, we must consider the application of La.C.C. art. 1621(12) as added by Act 456 of 1985. Generally, in determining whether a statute should apply retrospectively, where the legislature did not express that it intended for the statute to have retrospective application, the court is required to classify the statute as either substantive, procedural or interpretive legislation. Rousselle v. Plaquemines Parish School Bd., 93-1916 (La. 2/28/94), 633 So.2d 1235. A substantive law creates, confers or destroys rights, causes of action or legal duties. A procedural law prescribes methods for enforcing substantive laws, and relates to the form of the proceeding or the operation of the laws. An interpretive law merely establishes the meaning that the existing law had from the time of its enactment. Stelly v. Overhead Door Co. of B.R., 94-0456 (La. 12/8/94), 646 So.2d 905. In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retrospectively, unless there is a legislative expression to the contrary. La.C.C. art. 6.
Applying these precepts to Act 456 of 1985, it is clear that the legislation is not interpretive or procedural as it neither establishes the meaning of an existing law nor merely provides methods of enforcing substantive law. Rather, the enactment is a substantive law. It allows a testator to divest his descendent of his constitutional right to share in the estate of his parent in a fixed amount. It also creates a legal duty in the forced heir to communicate with his parent regularly or be subject to disinherison, which was not previously permitted on those grounds alone. Therefore, since the provision lacks an expression of legislative intent to the contrary, the substantive statute can apply prospectively only. Moreover, no law can be applied retroactively to divest a party of a vested right. Stelly v. Overhead Door Co. of B.R., supra.
Act 456 of 1985 was enacted with an effective date of September 6, 1985, creating a twelfth ground for disinherison in La. C.C. art. 1621(12). It cannot be applied retroactively to this case because it would effectively divest plaintiff of his right of inheritance to not less than a fixed portion of his parent's estate based on action, or inaction, by plaintiff that was not prescribed at the time the acts took place. In other words, until the effective date of La.C.C. art. 1621(12), there was no legal duty placed upon plaintiff to communicate with his mother within every two year period or create a ground for his disinherison. Therefore, in determining whether to uphold the disinherison of plaintiff in his mother's will based on La.C.C. art. 1621(12), we can only consider plaintiff's conduct after the effective date of the statute, that is, after September 6, 1985.
The length of time between the effective date of La.C.C. art. 1621(12) through the date of the will, October 12, 1987, is slightly more than two years and one month. The record indicates that, in that period of time, plaintiff sent his mother at least two Christmas cards, one on December, 21, 1985 and another on December 22, 1986, and a birthday card on April 25, 1987. They were respectful in the printed message, with a religious overtone, and were signed "Love, Don."
Defendant argues that these greeting cards are not sufficient "communications" to prevent the disinheritance. It is argued that because the cards were sent "by certified mail" and an affidavit by a friend was simultaneously executed concerning the mailing of the cards that they were not "communications" *565 within the meaning of the statute but were simply formalities by plaintiff to prevent the disinheritance. We disagree.
The statute, La.C.C. art. 1621(12), does not prescribe the form or manner of communication necessary to prevent the disinheritance. It merely refers to the "fail[ure] without just cause to communicate with the parent for a period of two years." The definition of the word communicate, as defined in Black's Law Dictionary, is "[t]o bestow, convey, make known, recount, impart; to give by way of information; to talk over; to transmit information." The statute does not require a response by the parent. Indeed, it would be an impossible burden to place on the heir to require the heir to illicit a response from his parent. A parent would then be able to disinherit any heir for any reason by simply refusing to respond to their communication.
La.C.C. art. 215 provides that "[a] child, whatever be his age, owes honor and respect to his father and mother." A letter in which the child denounces or berates the parent with disrespectful expressions would certainly not suffice. Thus, we find that the only qualitative standard imposed on the communications referred to in La.C.C. art. 1621(12) is that it must be respectful and made known or conveyed to the parent.
La.C.C. art. 1624 imposes the requirement on the testator to express in the will the reason for disinheriting the heir and it imposes the burden on the disinherited forced heir to prove that the cause stipulated for the disinherison did not exist. The reason expressed in the testator's will for plaintiff's disinheritance was plaintiff's failure to communicate with the testator for a period of two years "prior to execution of this will." Plaintiff disproved this ground for disinherison by establishing, through the admission of evidence, the fact that he respectfully communicated through cards with the testator at least three times during the two year and one month period in question.
We do not find that the cards are any less of a "communication", as argued by defendant, because they were sent with a request for a postal receipt. Contrary to defendant's assertion that the cards were sent by certified mail, the record shows that they were sent with a request for a postal receipt which was not apparent to the recipient of the cards. Nor do we find the "communication" diminished by the fact that plaintiff had his friend witness the signing and sending of the cards. With the amendment of La.C.C. art. 1621, adding section 12, the legislature also amended La.C.C. art. 1624, placing the burden of proof on the disinherited heir to show the inaccuracy of the disinherison ground stated in the testator's will. It was noted in a Law Review article, discussing the above mentioned Civil Code amendments, that: "Since the forced heir will bear the burden of persuading the judge that he did communicate with his parent, it would be advisable for the heir to have independent corroboration of the communication, such as a letter sent certified mail, return receipt requested." Katherine Shaw Spaht, Developments in the Law, 1984-85, Successions and Donations, 46 La.L.Rev. 707, 710.
Defendant argues that the receipt by the testator of these cards, which were sent solely to prevent disinherison, without a true relationship existing between her and her son, only served to further hurt the testator and distance her from her son. Therefore he argues that they should not be considered sufficient to prevent the disinheritance. Again, we disagree.
One of the grounds for disinherison under La.C.C. art. 1621 is that the child has been guilty of cruelty towards the parent. The testator herein could have selected that ground for disinherison, which would have allowed consideration of motivations and historical facts surrounding the communications. However, she did not designate cruel treatment as her grounds for disinheriting her son. Rather, she designated only his failure to communicate with her for a period of two years, which is simply not confirmed by the facts presented.
Accordingly, we find that plaintiff met his burden of proving that the cause for disinherison did not exist, in that there was no two year period from the effective date of La.C.C. art. 1621(12) until the date of the testator's will in which he failed to communicate *566 with his mother. Therefore, we hold that the trial court erred in maintaining the disinherison of plaintiff.
Next plaintiff argues that the testament provision leaving his forced portion in trust impinges upon his legitime. He argues that the trustee is vested with excessive authority such that his legitime is not protected and therefore is being impinged upon. Plaintiff also argues that the testator's motivation in placing his forced portion in trust was to restrict his acquisition of his forced portion and therefore it should be set aside by the court. We disagree with both arguments.
The testator's motivation for placing plaintiff's forced portion in trust is not dispositive of the question of whether or not it can be legally so placed. Furthermore, considering the testator's belief that her son did not handle money well, as evidenced by his handling of his children's trust funds, we cannot take issue with the testator's motivation for placing plaintiff's legitime in trust. The only question before us is whether the testator could legally place the forced portion in trust without impinging on the legitime. We find that the testator's actions were legal.
The placement of the forced portion in trust is expressly permitted in Article 12, Section 5 of the Louisiana Constitution and La.R.S. 9:1841-47 governing the legitime in trust. Specifically, La.R.S. 9:1841 provides:
The legitime or any portion thereof may be placed in trust provided:
(1) The net income accruing to the forced heir therefrom is payable to him not less than once each year; and
(2) The forced heir's interest is subject to no charges or conditions except as provided in R.S. 9:1843, 9:1844, 9:1891 through 9:1906 and 9:1972 through 9:1977.
(3) Except as permitted by R.S. 9:1844, the term of the trust, as it affects the legitime, does not exceed the life of the forced heir; and
(4) The principal shall be delivered to the forced heir or his heirs, legatees, or assignees free of trust, upon the termination of the portion of the trust that affects the legitime.
The testamentary trust in this case is in full compliance with the statutory requirements. Furthermore, plaintiff's argument that the trust does not contain adequate safeguards has no merit because the trust code provides mandatory safeguards for the protection of a trust. La.R.S. 9:1721-2252. Moreover, the question of whether the forced portion can be placed in trust has been previously considered and judicially approved. Succession of Earhart, 220 La. 817, 57 So.2d 695 (1952); Succession of Dunham, 393 So.2d 438 (La.App. 1st Cir.1980), affirmed in part, reversed in part on other grounds, 408 So.2d 888 (La.1981); Succession of Tatum, 347 So.2d 79 (La.App. 2nd Cir.1977), writs denied, 350 So.2d 896 (La.1977).
Accordingly, for the reasons set out above, we reverse the trial court judgment validating the disinherison, and find no impingement on the legitime by the placement of plaintiff's forced portion in trust. Costs of appeal are to be borne by defendant.
REVERSED AND RENDERED.
NOTES
[1] It is unclear from the record, which was designated, why the case went forward only on the disinherison issue. Plaintiff contends that it was as a result of a motion to bifurcate and sever. However, defendant states that plaintiff waived and dismissed his claim concerning lack of the testator's capacity.